CV 14          5151

MATSUMOTO, J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x          AB0783

CERTAIN UNDERWRITERS AT LLOYDS,          :
LONDON, GREAT AMERICAN INSURANCE         :
COMPANY and SWISS RE INTERNATIONAL       :
SE, LUXEMBOURG, ZURICH BRANCH, as        :
subrogee of Via Mat International Ltd. and/or Via   :
Mat International (USA) Inc. and/or Via Mat         :          **NOTICE OF REMOVAL**
International GMBH and/or Via Mat International     :
(Hong Kong) Ltd. and/or Via Mat International      :
AG and/or Via Mat International (Shanghai)         :
and/or Via Mat International (Dubai) as Agents      :
and/or Associated and/or Subsidiary Companies,     :

            Plaintiffs,          :

      v.          :

SWISS INTERNATIONAL AIR LINES, LTD.      :
and ISS ACTION, INC.,                    :

           Defendants.          :
-------------------------------------------------------------------x

FILED
CLERK
2014 SEP -2  PM 12: 39
U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

      Defendant SWISS INTERNATIONAL AIRLINES, LTD. (hereinafter SWISS"), by

and through its attorneys Condon & Forsyth LLP, hereby removes this action to the United

States District Court for the Eastern District of New York pursuant to 28 U.S.C. §§ 1331 and

1441.

      1.     This action was commenced against defendants in the Supreme Court of the

State of New York, County of Queens on August 8, 2014 by the filing of a Summons and

Complaint. Copies of the Summons and Complaint are annexed hereto as Exhibit "A".

      2.     The Summons and Verified Complaint was thereafter served on defendant

SWISS by service on CT Corporation, Swiss's authorized agent for acceptance of service of

process, on August 15, 2014.

      3.     The object of this action is to recover damages for alleged pilferage of

currency from three Sky Boxes shipped by defendant Swiss from Zurich, Switzerland to New York, New York aboard Swiss flight LX016 on June 22, 2013 under a Swiss international air waybill. *See*, Complaint, Exhibit "A" hereto, paras. 11, 14 and 27.

5.　The transportation out of which the subject matter of this action arose was "international carriage" within the meaning of a treaty of the United States known as the Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Montreal, Canada on May 18, 1999, reprinted in S. Treaty Doc. 106-45, CCH Av. L. Rep ¶ 27,400-59, 1999 WL 33292734 (1999) ("Montreal Convention"), and the rights of the parties to this action are governed by the provisions of said Montreal Convention. Accordingly, the underlying action may be removed to this Court by defendants pursuant to the provisions of 28 U.S.C. § 1331 as the action arises under a treaty of the United States, the Montreal Convention.

6.　Pursuant to 28 U.S.C. § 1446(a), this Notice of Removal is filed in the United States District Court for the Eastern District of New York, which is the district in which the civil court action is pending.

7.　This Notice of Removal is timely filed with this Court, pursuant to 28 U.S.C. § 1446(b).

8.　Defendant SWISS will promptly file a copy of the Notice of Removal with the Clerk of the Supreme Court of the State of New York, County of Queens, as required by 28 U.S.C. § 1446(d).

9.　Defendant ISS Action, Inc. has not, upon information and belief, yet been served with the Summons and Complaint in this matter.

Defendant SWISS, therefore, is entitled to remove this action to this Court pursuant to 28 U.S.C. § 1441.

WHEREFORE, defendant SWISS INTERNATIONAL AIR LINES, LTD. prays that

the above-entitled action now pending in the Supreme Court of the State of New York, County

of Queens, be removed therefrom to this Court.

Dated:   New York, New York
         September 2, 2014

                                    CONDON & FORSYTH LLP

                                    By_____
                                         Anthony U. Battista (AB 0783)
                                         abattista@condonlaw.com
                                         7 Times Square
                                         New York, New York 10036
                                         (212) 490-9100

                                    Attorneys for Defendant
                                    SWISS INTERNATIONAL AIR LINES, LTD.

TO:   Jonathan S. Chernow, Esq.
      White Fleishner & Fino, LLP
      Attorneys for Plaintiffs
      61 Broadway
      18 Floor
      New York, New York  10006
      (212) 487-9700

      ISS Action, Inc.
      158-12 Rockaway Boulevard
      Suite 200
      Queens, New York  11434

3

# EXHIBIT "A"

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

----------------------------------------------------------X

CERTAIN UNDERWRITERS AT LLOYDS, LONDON,
GREAT AMERICAN INSURANCE COMPANY and
SWISS RE INTERNATIONAL SE, LUXEMBOURG,
ZURICH BRANCH,  as subrogees of Via Mat
International Ltd. and/or Via Mat International (USA)
Inc. and/or Via Mat International GMBH and/or Via Mat
International (Hong Kong) Ltd. and/or Via Mat International
AG and/or Via Mat International (Shanghai) and/or Via Mat
International (Dubai) as Agents and/or Associated and/or
Subsidiary Companies,

Index No.: 12007/14



Plaintiffs,

**SUMMONS**

-against-

SWISS INTERNATIONAL AIR LINES, LTD.
and ISS ACTION, INC.,

Defendants.

The basis of Venue is
Defendants' Residence
pursuant to CPLR
§ 503(c).

----------------------------------------------------------X

**TO THE ABOVE NAMED DEFENDANTS:**

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to

serve a copy of your answer, or, if the complaint is not served with this summons to serve a

notice of appearance, on the undersigned attorneys for the plaintiffs, within twenty (20) days

after service of this summons and complaint, exclusive of the day of service or within thirty

(30) days after service, if this summons is not personally served within the State of New

York.

    In case of your failure to appear or answer, judgment will be taken against you by

default for the relief demanded herein.

Dated: New York, New York
       August 8, 2014

Yours, etc.

WHITE FLEISCHNER & FINO, LLP

By: _____
       Jonathan S. Chernow
Attorneys for Plaintiffs
CERTAIN UNDERWRITERS AT LLOYDS,
LONDON,        GREAT        AMERICAN
INSURANCE COMPANY and SWISS RE
INTERNATIONAL    SE,    LUXEMBOURG,
ZURICH BRANCH, as subrogees of Via Mat
International Ltd. and/or Via Mat International
(USA) Inc. and/or Via Mat International GMBH
and/or Via Mat International (Hong Kong) Ltd.
and/or Via Mat International AG and/or Via
Mat International (Shanghai) and/or Via Mat
International   (Dubai)   as   Agents   and/or
Associated and/or Subsidiary Companies.
61 Broadway - 18th Floor
New York, New York 10006
(212) 487-9700
Our File No.: 385-17502S

To: [See Attached Affidavit]

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-------------------------------------------------------------X
CERTAIN UNDERWRITERS AT LLOYDS, LONDON,
GREAT AMERICAN INSURANCE COMPANY, and
SWISS RE INTERNATIONAL SE, LUXEMBOURG,
ZURICH BRANCH, as subrogees of Via Mat International    Index No.:
Ltd. and/or Via Mat International (USA) Inc. and/or Via
Mat International GMBH and/or Via Mat International
(Hong Kong) Ltd. and/or Via Mat International AG and/or
Via Mat International (Shangnai) and/or Via Mat
International (Dubai) as Agents and/or Associated and/or
Subsidiary Companies,                                                        **COMPLAINT**


                                        Plaintiffs,

                -against-


SWISS INTERNATIONAL AIR LINES LTD. and
ISS ACTION, INC.,

                                        Defendants.
-------------------------------------------------------------X

Plaintiffs, CERTAIN UNDERWRITERS AT LLOYDS, LONDON, GREAT

AMERICAN INSURANCE COMPANY and SWISS RE INTERNATIONAL SE,

LUXEMBOURG, ZURICH BRANCH (collectively, "UNDERWRITERS"), as subrogees of

Via Mat International Ltd. and/or Via Mat International (USA) Inc. and/or Via Mat

International GMBH and/or Via Mat International (Hong Kong) Ltd. and/or Via Mat

International AG and/or Via Mat International (Shanghai) and/or Via Mat International

(Dubai) as Agents and/or Associated and/or Subsidiary Companies, by their attorneys,

WHITE FLEISCHNER & FINO, LLP, as and for their Complaint against Defendants SWISS

INTERNATIONAL AIR LINES LTD. ("SIAL") and ISS ACTION, INC. ("ISS"), upon

information and belief, respectfully allege as follows:

3

## THE PARTIES

1.     At all times hereinafter mentioned, Plaintiff CERTAIN UNDERWRITERS AT LLOYDS, LONDON was and is a foreign unincorporated association, authorized to conduct the business of insurance on a surplus lines basis in the State of New York, with its principal place of business located in London, England.

2.     At all times hereinafter mentioned, Plaintiff GREAT AMERICAN INSURANCE COMPANY was and is a foreign corporation, authorized to conduct the business of insurance in the State of New York, and duly organized and existing under the laws of Ohio with its principal place of business located in Cincinnati, Ohio.

3.     At all times hereinafter mentioned, Plaintiff SWISS RE INTERNATIONAL SE, LUXEMBOURG, ZURICH BRANCH, was and is a foreign corporation, authorized to conduct the business of insurance on an excess lines basis in the State of New York, with its principal place of business located in Zurich, Switzerland.

4.     At all times hereinafter mentioned, UNDERWRITERS' subrogors, Via Mat International Ltd. and/or Via Mat International (USA) Inc. and/or Via Mat International GMBH and/or Via Mat International (Hong Kong) Ltd. and/or Via Mat International AG and/or Via Mat International (Shanghai) and/or Via Mat International (Dubai) as Agents and/or Associated and/or Subsidiary Companies (hereinafter collectively referred to as "Via Mat"), were and are foreign corporations and were and are authorized to conduct business in the State of New York, with their principal place of business located in Kloten, Switzerland.

5.     Upon information and belief, and at all times relevant to this action, defendant SWISS INTERNATIONAL AIR LINES LTD. ("SIAL") was and is a foreign corporation in the business of worldwide cargo services, with its principal place of business located in

4

Basel, Switzerland, with a division or subsidiary known as "SWISS WORLD CARGO" ("SWC") located and doing business at Cargo Bldg. 22, Jamaica, New York, 11430, and with a registered agent for service of process at CT Corporation System, 111 Eighth Avenue, New York, NY 10011.

6.    Upon information and belief, and at all times relevant to this action, defendant ISS ACTION, INC. (hereinafter, "ISS") was and is a New York corporation operating in the security guard and patrol services industry, with its principal place of business located in the State of New York at JFK Airport, Bldg. 151, Suite 310A, Jamaica, New York 11430.

## JURISDICTION and VENUE

7.    This Court has jurisdiction over the parties to this action pursuant to CPLR § 301 and 302 *et. seq.* in that, at all relevant times, each has a place of business and/or resides in the State of New York, or regularly does or solicits business in the State of New York, and/or engages in acts outside of the State of New York with an expectation and/or reasonable expectation that these acts have consequences in the State of New York.

8.    Venue in this Court is proper pursuant to CPLR § 503(c) as the County of Queens is the principal place of business of Defendant ISS and Defendant SIAL, through its division and/or subsidiary, SWC, maintains a place of business in the County of Queens.

## FACTS COMMON TO ALL CAUSES OF ACTION

9.    UNDERWRITERS, subscribing to policy of insurance number B0509QR022612, insured subrogors Via Mat, during the period from September 1, 2012 to October 1, 2013 ("the "Policy").

10.    UNDERWRITERS have been subrogated to the rights of Via Mat in the amount of $1,200,000.00 (USD) for the loss of banknotes (the "Banknotes"), having duly made

payment in that amount to Via Mat as subrogors pursuant to the terms of the Policy.

11.    On June 21, 2013, Via Mat arranged for the shipment and delivery of three (3) Sky Boxes containing a total of $193,520,000.00 in various currency, including the Banknotes, being shipped on behalf of the Federal Reserve Bank of New York from Zurich, Switzerland, to John F. Kennedy International Airport ("JFK Airport") in New York.

12.    The various currency was separated by denominations into bundles, and was placed into clear plastic shipping bags. The bags, in turn, were placed into three (3) Sky Boxes at Via Mat's facility in Switzerland, which were affixed with seals numbered A0279818, A0279819, and A0279820 (the "Sky Boxes").

13.    The Banknotes at issue were placed within Sky Box number 16, Seal Number A0279818, which, upon and information and belief, contained 58 bags.

14.    The three Sky Boxes were subsequently transported to the offices of Cargologic AG. On June 22, 2013, the Sky Boxes were transported to New York aboard Swissair Flight LX016, under SWC Air Waybill #724-162 6 7532 (the "SWC Air Waybill"). The terms and conditions of the SWC Air Waybill are incorporated herein by reference and referred to the Honorable Court.

15.    Prior to the shipment, Via Mat specified, and the SWC Air Waybill confirms, that "Valuable Cargo" was being shipped and "Special Supervision" was required. Defendant SIAL further promised to provide the aforementioned "Special Supervision" in exchange for the payment of supplementary sums and additional charges, which raised the total payment to SWC to $5,228.70.

16.    Defendant SIAL's aforesaid promise was a separate, risk-related promise to Via Mat and constituted a material deviation from any purported limitation of liability in the SWC

6

Air Waybill.

17.     The Sky Boxes arrived at JFK Airport in New York in the afternoon of June 22, 2013, and SIAL representatives transported the sealed container housing the three Sky Boxes to SWC's cargo facility.

18.     Upon information and belief, Defendant ISS had previously been contracted by SIAL and/or SWC, to monitor activities in the vicinity of boxes and cargo arriving at JFK Airport and their movement from the plane to the SWC cargo facility.

19.     Upon information and belief, it was generally known to SIAL, SWC and ISS that SWC provided cargo services to Via Mat which utilized ISS' supervision or security.

20.     Upon information and belief, SIAL and/or SWC contracted with ISS in this particular instance to monitor activities in the vicinity of the Sky Boxes' arrival at JFK Airport and their movement from the plane to the SWC cargo facility.

21.     Upon information and belief, proof of ISS' retention, in the form of a "notification of incoming shipment" from Switzerland, was purged from SWC's computer system in breach of applicable international conventions for transportation of air freight.

22.     On or about June 22, 2013, a representative of Via Mat inspected the three Sky Boxes and discovered that Sky Box number 16, Seal A0279818, containing the Banknotes, was damaged, and the bag containing the Banknotes was broken.

23.     Upon information and belief, Seal A0279818 was discarded by SWC, and moreover, SWC failed to complete an incident report as required after the damaged container was brought to its attention and the attention of the cargo supervisor.

24.     The three Sky Boxes were subsequently released by SWC to Via Mat, and they were transported and secured within a vault at the premises of Via Mat.

25.     From the time the Sky Boxes containing the Banknotes arrived at JFK Airport to the time when they were released to Via Mat, the Sky Boxes were in the exclusive possession, custody and/or control of SWC.

26.     On or about June 24, 2013, the Sky Boxes were transported to the Federal Reserve Bank of New York's East Rutherford, New Jersey location, whereupon Via Mat advised representatives of the Federal Reserve Bank of New York that Sky Box number 16, Seal A0279818, was damaged.

27.     Representatives of the Federal Reserve Bank of New York conducted a reconciliation of the contents of Sky Box number 16, Seal A0279818, and discovered that Banknotes having a total value of $1,200,000.00 were missing.

28.     On June 24, 2013, Via Mat sent a notice of claim to SIAL and SWC, advising that the Banknotes were missing from Sky Box number 16, Seal A0279818 (the "June 24th Loss") and holding SWC liable.   No response was received.

29.     By letter dated November 12, 2013, counsel for the UNDERWRITERS apprised SIAL and SWC that their actions constituted breach of contract, negligence, and gross negligence, demanded that SWC and/or its insurance carrier agree to pay for the June 24th Loss, and placed SWC on notice that they would seek to recover the sum of $1,200,000.00 plus interest.

30.     To date, SIAL has refused to pay or reimburse UNDERWRITERS for the June 24th Loss.

31.     By electronic mail dated February 5, 2014, counsel for the UNDERWRITERS apprised ISS that they were a third-party beneficiary of SIAL's contract with ISS and demanded that ISS place its insurance carrier on notice of a claim for the June 24th Loss.

8

32.     To date, ISS has refused to pay or reimburse UNDERWRITERS for the June 24th Loss.

### COUNT I - NEGLIGENCE
### (SIAL)

33.     UNDERWRITERS repeat, reiterate, and reallege each and every allegation contained in Paragraphs "1" through "32" of the Complaint with the same force and effect as if more fully set forth at length herein.

34.     On or about June 22, 2013, Defendant SIAL was in possession, custody, and control of the Banknotes, and had the primary duty to take reasonable care of the Banknotes, to prevent loss or damage to the container containing the Banknotes, to prevent theft of the Banknotes, to use due care when accepting the container containing the Banknotes and storing it in their cargo facility, and to have the container containing the Banknotes loaded, transported, and delivered in an undamaged condition.

35.     Upon information and belief, the loss of the Banknotes was caused by and resulted from the negligent, careless, and/or reckless acts and/or omissions and/or other liability arising from the conduct of SIAL, its agents, sub-agents, servants, representatives, workers, employees, and/or subcontractors acting within the course and scope of their employment, to Via Mat. Said acts and/or omissions included, but were not limited to:

> (a) Failing to take proper and adequate precautions while handling and/or storing the Banknotes;
>
> (b) failing to provide "Special Supervision" and/or a high level of security, handling, safety, and supervision as required under these particular circumstances, and as SWC knew or should have known was required for "Valuable Cargo" based on the notification provided to SWC by Via Mat;

(c) failing to adequately protect the Banknotes;

(d) careless, negligent, reckless, and otherwise improper handling and/or storing of the Banknotes;

(e) failing to properly and adequately train and supervise its agents, sub-agents, representatives, workmen, employees and/or subcontractors to insure that proper, adequate, and safe means and methods were used while handling and/or storing the Banknotes;

(f) failing to deliver the container containing the Banknotes in an undamaged condition;

(g) failing to supervise and verify the handling and/or storing process and the integrity of such process;

(h) failing to properly and adequately train and supervise ISS to monitor activities in the vicinity of the Banknotes and their movement from the plane to the cargo facility,

(i) improperly discarding the Seal on the container containing the Banknotes, and improperly purging all record of ISS's retention to monitor the Banknotes;

(j) failing to complete an incident report after the damaged container was brought to its attention and the attention of the cargo supervisor;

(k) failing to ensure the applicable rules, regulations, ordinances, codes, industry standards and/or statutes were complied with in regard to the handling and delivery of the Banknotes; and

(l) otherwise failing to use due care under the circumstances in ways which

10

may be revealed during the course of discovery.

36.     As a direct and proximate result of SIAL's breach of its duty to Via Mat and negligence, carelessness, negligent acts and/or omissions, on or about June 24, 2013, Via Mat sustained a loss of the Banknotes, and was damaged in the amount of $1,200,000.00.

37.     Therefore, by virtue of UNDERWRITERS' interest as the subrogee of Via Mat, Defendant SIAL is liable to UNDERWRITERS in the amount of $1,200,000.00.

### COUNT II – WILLFUL NEGLIGENCE
### (SIAL)

38.     UNDERWRITERS repeat, reiterate, and reallege each and every allegation contained in Paragraphs "1" through "37" of the Complaint with the same force and effect as if more fully set forth at length herein.

39.     On or about June 22, 2013, Defendant SIAL was in possession, custody, and control of the Banknotes, and had the primary duty to take reasonable care of the Banknotes, to prevent loss or damage to the container containing the Banknotes, to prevent theft of the Banknotes, to use due care when accepting the container containing the Banknotes and storing it in their cargo facility, and to have the container containing the Banknotes loaded, transported and delivered in an undamaged condition.

40.     Upon information and belief, the loss of the Banknotes was caused by and resulted from the willful negligence, gross negligence and/or recklessness and/or other liability which was tantamount to a criminal act and intentional wrongdoing arising from the conduct of SIAL, its agents, sub-agents, servants, representatives, workers, employees, and/or subcontractors acting within the course and scope of their employment, to Via Mat. Said conduit included, but was not limited to:

(a) Failing to take proper and adequate precautions while handling and/or

11

storing the Banknotes;

(b) failing to provide "Special Supervision" and/or a high level of security, handling, safety, and supervision as required under these particular circumstances, and as SWC knew or should have known was required for "Valuable Cargo" based on the notification provided to SWC by Via Mat;

(c) failing to adequately protect the Banknotes;

(d) careless, negligent, reckless, and otherwise improper handling and/or storing of the Banknotes;

(e) failing to properly and adequately train and supervise its agents, sub-agents, representatives, workmen, employees and/or subcontractors to insure that proper, adequate, and safe means and methods were used while handling and/or storing the Banknotes;

(f) failing to deliver the container containing the Banknotes in an undamaged condition;

(g) failing to supervise and verify the handling and/or storing process and the integrity of such process;

(h) failing to properly and adequately train and supervise ISS to monitor activities in the vicinity of the Banknotes and their movement from the plane to the cargo facility;

(i) improperly discarding the Seal on the container containing the Banknotes, and improperly purging all record of ISS's retention to monitor the Banknotes;

(j) failing to complete an incident report after the damaged container was

brought to its attention and the attention of the cargo supervisor;

(k) failing to ensure the applicable rules, regulations, ordinances, codes, industry standards and/or statutes were complied with in regard to the handling and delivery of the Banknotes; and

(l) otherwise failing to use due care under the circumstances in ways which may be revealed during the course of discovery.

41.     As a direct and proximate result of SIAL's breach of its duty to Via Mat and willful negligence, gross negligence and/or recklessness and/or other liability which was tantamount to a criminal act and intentional wrongdoing, on or about June 24, 2013, Via Mat sustained a loss of the Banknotes, and was damaged in the amount of $1,200,000.00.

42.     Therefore, by virtue of UNDERWRITERS' interest as Via Mat's subrogee, Defendant SIAL is liable to UNDERWRITERS in the amount of $1,200,000.00.

## COUNT III – BREACH OF BAILMENT
## (SIAL)

43.     UNDERWRITERS repeat, reiterate, and reallege each and every allegation contained in Paragraphs "1" through "42" of the Complaint with the same force and effect as if more fully set forth at length herein.

44.     On or about June 22, 2013, Defendant SIAL was in possession, custody, and control of the Banknotes, creating a bailment.

45.     As bailee, SIAL had the primary duty to take reasonable care of the Banknotes, to prevent loss or damage to the container containing the Banknotes, to prevent theft of the Banknotes, to use due care when accepting the container containing the Banknotes and storing it in their cargo facility, and to have the container containing the Banknotes loaded, transported, and delivered in an undamaged condition.

13

46.     At the time SIAL came into possession of the container holding the Banknotes, and undertook to handle, transport, and store such container, the container still secured and provided adequate protection for the Banknotes.

47.     Upon information and belief, the loss of the Banknotes was caused by and resulted from the negligent, careless, and/or reckless acts and/or omissions and/or other liability arising from the conduct of SIAL, its agents, sub-agents, servants, representatives, workers, employees, and/or subcontractors acting within the course and scope of their employment, to Via Mat.  Said acts and/or omissions included, but were not limited to:

(a) Failing to take proper and adequate precautions while handling and/or storing the Banknotes;

(b) failing to adequately protect the Banknotes;

(c) careless, negligent, reckless, and otherwise improper handling and/or storing of the Banknotes;

(d) failing to properly and adequately train and supervise its agents, sub-agents, representatives, workmen, employees and/or subcontractors to insure that proper, adequate, and safe means and methods were used while handling and/or storing the Banknotes;

(e) failing to deliver the container containing the Banknotes in an undamaged condition;

(f) failing to supervise and verify the handling and/or storing process and the integrity of such process;

(g) failing to ensure the applicable rules, regulations, ordinances, codes, industry standards and/or statutes were complied with in regard to the handling and

delivery of the Banknotes; and

(h) otherwise failing to use due care under the circumstances in ways which may be revealed during the course of discovery.

48.     As a direct and proximate result of SIAL's negligence, carelessness, recklessness, negligent acts, willful negligence, gross negligence, and/or omissions in breach of the bailment relationship and SIAL's duties as bailee to Via Mat while the Banknotes were in SIAL's possession, custody and control, on or about June 24, 2013, Via Mat sustained a loss of the Banknotes, and was damaged in the amount of $1,200,000.00.

49.     Therefore, by virtue of UNDERWRITERS' interest as subrogee of Via Mat, Defendant SIAL is liable to UNDERWRITERS in the amount of $1,200,000.00.

## COUNT IV – BREACH OF CONTRACT
### (SIAL)

50.     UNDERWRITERS repeat, reiterate, and reallege each and every allegation contained in Paragraphs "1" through "49" of the Complaint with the same force and effect as if more fully set forth at length herein.

51.     SIAL and/or SWC entered into a contract of carriage with Via Mat to handle and store the shipment containing the Banknotes under the SWC Air Waybill. The terms and conditions of the SWWC Air Waybill are incorporated herein by reference and referred to the Honorable Court.

52.     Prior to the shipment, Via Mat specified, and the SWC Air Waybill confirms, that "Valuable Cargo" was being shipped and "Special Supervision" was required.

53.     Defendant SIAL further promised to provide the aforementioned "Special Supervision" in exchange for the payment of supplementary sums and additional charges, which raised the total payment to SWC to $5,228.70.

15

54. Defendant SIAL's aforesaid promise was a separate, risk-related promise to Via Mat and constituted a material deviation from any purported limitation of liability in the SWC Air Waybill.

55. Upon information and belief, Defendant ISS has previously been contracted by SIAL and/or SWC to monitor activities in the vicinity of boxes and cargo arriving at JFK Airport and their movement from the plane to the SWC cargo facility.

56. Upon information and belief, it was generally known to SIAL, SWC and ISS that SWC provided cargo services to Via Mat which utilized ISS' supervision or security.

57. Upon information and belief, SIAL and/or SWC contracted with ISS in this particular instance to monitor activities in the vicinity of the Sky Boxes' arrival at JFK Airport and their movement from the plane to the SWC cargo facility.

58. Upon information and belief, the loss of the Banknotes was caused by and resulted from the acts and/or omissions and/or other liability arising from the conduct of SIAL, its agents, sub-agents, servants, representatives, workers, employees, and/or subcontractors acting within the course and scope of their employment, in breach of the contract of carriage with Via Mat. Said acts and/or omissions included, but were not limited to:

> (a) Failing to take proper and adequate precautions while handling and/or storing the Banknotes;

> (b) failing to provide "Special Supervision" and/or a high level of security, handling, safety, and supervision as required under these particular circumstances, and as SWC knew or should have known was required for "Valuable Cargo" based on the notification provided to SWC by Via Mat;

> (c) failing to adequately protect the Banknotes;

16

> (d) careless, negligent, reckless, and otherwise improper handling and/or storing of the Banknotes;
>
> (e) failing to deliver the container containing the Banknotes in an undamaged condition; and
>
> (f) failing to contract with ISS to monitor activities in the vicinity of the Banknotes and their movement from the plane to the cargo facility.

59.     In addition, SIAL breached its contract of carriage with Via Mat by failing to complete any incident report after the damaged container containing the Banknotes was brought to its attention and the attention of the cargo supervisor.

60.     Accordingly, SIAL materially deviated from and breached its contract of carriage with Via Mat, and as such is not entitled to the protections of the applicable international conventions for the transportation of air freight or any purported limitations of liability in the SWC Air Waybill.

61.     As a direct and proximate result of SIAL's breach of its contract with Via Mat, on or about June 24, 2013, Via Mat sustained a loss of the Banknotes, and was damaged in the amount of $1,200,000.00.

62.     Therefore, by virtue of UNDERWRITERS' interest as Via Mat's subrogee, Defendant SIAL is liable to UNDERWRITERS in the amount of $1,200,000.00.

## COUNT V – BREACH OF CONTRACT AS THIRD-PARTY BENEFICIARY (ISS)

63.     UNDERWRITERS repeat, reiterate, and reallege each and every allegation contained in Paragraphs "1" through "62" of the Complaint with the same force and effect as if more fully set forth at length herein.

64.     Upon information and belief, Defendant ISS has previously been contracted by

17

SIAL and/or SWC to monitor activities in the vicinity of boxes and cargo arriving at JFK Airport and their movement from the plane to the SWC cargo facility.

65.     Upon information and belief, it was generally known to SIAL, SWC and ISS that SWC provided cargo services to Via Mat which utilized ISS' supervision or security.

66.     Upon information and belief, SIAL and/or SWC contracted with ISS in this particular instance to monitor activities in the vicinity of the Sky Boxes' arrival at JFK Airport and their movement from the plane to the SWC cargo facility.

67.     ISS assumed the risk of providing the aforementioned services for the benefit of Via Mat and Via Mat had a reasonable expectation that these services would be provided.

68.     Accordingly, Via Mat was a third party beneficiary of SIAL's and/or SWC's contract with ISS.

69.     On or about June 22, 2013, Defendant ISS breached its contractual duty to monitor activities in the vicinity of the Banknotes, and their movement from the plane to the SWC cargo facility, and to take reasonable care of the Banknotes so as to prevent loss or damage to the container containing the Banknotes, and to prevent theft of the Banknotes.

70.     As a direct and proximate result of ISS' breach of contract, on or about June 24, 2013, Via Mat sustained a loss of the Banknotes, and was damaged in the amount of $1,200,000.00.

71.     Therefore, by virtue of UNDERWRITERS' interest as Via Mat's subrogee, Defendant SIAL is liable to UNDERWRITERS in the amount of $1,200,000.00.

## COUNT VI – NEGLIGENCE
### (ISS)

72.     UNDERWRITERS repeat, reiterate, and reallege each and every allegation contained in Paragraphs "1" through "71" of the Complaint with the same force and effect as if

18

more fully set forth at length herein.

73.     ISS had a duty of care to Via Mat.

74.     Upon information and belief, the loss of the Banknotes was caused by and resulted from the negligent, careless, and/or reckless acts and/or omissions and/or other liability arising from the conduct of ISS, its agents, sub-agents, servants, representatives, workers, employees, and/or subcontractors, acting within the course and scope of their employment, to Via Mat. Said acts and/or omissions included, but were not limited to:

> (a) Failing to take proper and adequate precautions while monitoring and supervising the Banknotes;
>
> (b) failing to provide a high level of security, handling, safety, and supervision as required under these particular circumstances, and as ISS knew or should have known was required for "Valuable Cargo" based on the notification provided to SWC by Via Mat;
>
> (c) failing to adequately protect the Banknotes;
>
> (d) careless, negligent, reckless, and otherwise improper monitoring and/or supervision of the Banknotes;
>
> (e) failing to properly and adequately train and supervise its agents, sub-agents, representatives, workmen, employees and/or subcontractors to insure that proper, adequate, and safe means and methods were used while monitoring and supervising the Banknotes;
>
> (f) failing to supervise and verify the monitoring and/or supervision process and the integrity of such process;
>
> (g) failing to ensure the applicable rules, regulations, ordinances, codes, industry

19

standards and/or statutes were complied with in regard to the monitoring and

supervision of the Banknotes; and

(h) otherwise failing to use due care under the circumstances in ways which

may be revealed during the course of discovery.

75.     As a direct and proximate result of ISS' breach of its duty to Via Mat and

negligence, carelessness, negligent acts and/or omissions, on or about June 24, 2013, Via Mat

sustained a loss of the Banknotes, and was damaged in the amount of $1,200,000.00.

76.     Therefore, by virtue of UNDERWRITERS' interest as subrogee of Via Mat,

Defendant ISS is liable to UNDERWRITERS in the amount of $1,200,000.00.

## COUNT VII – WILLFUL NEGLIGENCE
## (ISS.)

77.     UNDERWRITERS repeat, reiterate, and reallege each and every allegation

contained in Paragraphs "1" through "76" of the Complaint with the same force and effect as if

more fully set forth at length herein.

78.     ISS had a duty of care to Via Mat.

79.     Upon information and belief, the loss of the Banknotes was caused by and

resulted from the willful negligence, gross negligence and/or recklessness and/or other liability

which was tantamount to a criminal act and intentional wrongdoing arising from the conduct of

ISS, its agents, sub-agents, servants, representatives, workers, employees, and/or

subcontractors acting within the course and scope of their employment, to Via Mat.  Said

conduit included, but was not limited to:

(a) Failing to take proper and adequate precautions while monitoring and

supervising the Banknotes;

(b) failing to provide a high level of security, handling, safety, and supervision

20

as required under these particular circumstances, and as ISS knew or should have known was required for "Valuable Cargo" based on the notification provided to SWC by Via Mat;

(c) failing to adequately protect the Banknotes;

(d) careless, negligent, reckless, and otherwise improper monitoring and/or supervision of the Banknotes;

(e) failing to properly and adequately train and supervise its agents, sub-agents, representatives, workmen, employees and/or subcontractors to insure that proper, adequate, and safe means and methods were used while monitoring and supervising the Banknotes;

(f) failing to supervise and verify the monitoring and/or supervision process and the integrity of such process;

(g) failing to ensure the applicable rules, regulations, ordinances, codes, industry standards and/or statutes were complied with in regard to the monitoring and supervision of the Banknotes; and

(h) otherwise failing to use due care under the circumstances in ways which may be revealed during the course of discovery.

80.     As a direct and proximate result of ISS' breach of its duty to Via Mat and willful negligence, gross negligence and/or recklessness and/or other liability which was tantamount to a criminal act and intentional wrongdoing, on or about June 24, 2013, Via Mat sustained a loss of the Banknotes, and was damaged in the amount of $1,200,000.00.

81.     By virtue of UNDERWRITERS' interest as Via Mat's subrogee, Defendant ISS is liable to UNDERWRITERS in the amount of $1,200,000.00.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment on their complaint against Defendants as follows:

1.     On Count I, judgment against SIAL for damages sustained as a result of its negligence, in the amount of $1,200,000.00, together with interest, costs, attorney's fees, and such other damages as may be properly awarded by this Court.

2.     On Count II, judgment against SIAL for damages sustained as a result of its willful negligence, in the amount of $1,200,000.00, together with interest, costs, attorney's fees, and such other damages as may be properly awarded by this Court.

3.     On Count III, judgment against SIAL for damages sustained as a result of its breach of bailment, in the amount of $1,200,000.00, together with interest, costs, attorney's fees, and such other damages as may be properly awarded by this Court.

4.     On Count IV, judgment against SIAL for compensatory damages sustained as a result of its breach of contract, in the amount of $1,200,000.00, together with interest, costs, attorney's fees, and such other damages as may be properly awarded by this Court.

5.     On Count V. judgment against ISS for compensatory damages sustained as a result of its breach of contract, in the amount of $1,200,000.00, together with interest, costs, attorney's fees, and such other damages as may be properly awarded by this Court.

6.     On Count VI, judgment against ISS for damages sustained as a result of its negligence, in the amount of $1,200,000.00, together with interest, costs, attorney's fees, and such other damages as may be properly awarded by this Court.

7.     On Count VII, judgment against ISS for damages sustained as a result of its willful negligence, in the amount of $1,200,000.00, together with interest, costs, attorney's

fees, and such other damages as may be properly awarded by this Court.

8.     For the costs of suit incurred herein, including reasonable attorneys' fees.

9.     For such other and further relief as this Court may deem just and proper.

Dated: New York, New York
        August 8, 2014

                                        Yours, etc.

                                        WHITE FLEISCHNER & FINO, LLP

                                        By: _____
                                              Jonathan S. Chernow
                                        Attorneys for Plaintiffs
                                        CERTAIN UNDERWRITERS AT LLOYDS,
                                        LONDON,        GREAT        AMERICAN
                                        INSURANCE COMPANY and SWISS RE
                                        INTERNATIONAL    SE,   LUXEMBOURG,
                                        ZURICH BRANCH, as subrogees of Via Mat
                                        International Ltd. and/or Via Mat International
                                        (USA) Inc. and/or Via Mat International GMBH
                                        and/or Via Mat International (Hong Kong) Ltd.
                                        and/or Via Mat International AG and/or Via
                                        Mat International (Shanghai) and/or Via Mat
                                        International    (Dubai)    as   Agents   and/or
                                        Associated and/or Subsidiary Companies,
                                        61 Broadway - 18th Floor
                                        New York, New York 10006
                                        (212) 487-9700
                                        Our File No.: 385-17502S

To: [See Attached Affidavit]

23

Index No.:                                          Year

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
=====================================================

CERTAIN UNDERWRITERS AT LLOYDS, LONDON,
GREAT AMERICAN INSURANCE COMPANY and
SWISS RE INTERNATIONAL SE, LUXEMBOURG,
ZURICH BRANCH,  as subrogees of Via Mat
International Ltd. and/or Via Mat International (USA)
Inc. and/or Via Mat International GMBH and/or Via Mat
International (Hong Kong) Ltd. and/or Via Mat International
AG and/or Via Mat International (Shanghai) and/or Via Mat
International (Dubai) as Agents and/or Associated and/or
Subsidiary Companies,

                        Plaintiffs,


              -against-


SWISS INTERNATIONAL AIR LINES, LTD.
and ISS ACTION, INC.,
=====================================================

### SUMMONS AND COMPLAINT
=====================================================

*Attorneys for*              **WHITE FLEISCHNER & FINO, LLP**

                             **61 BROADWAY**
                             **NEW YORK, N.Y. 10006**
                             **(212) 487-97000**
=====================================================

*To:*
*Attorney(s) for*
-----------------------------------------------------
*Service of a copy of the within*       is hereby admitted.
*Dated: ........................*
                                        *Attorney(s) for*
=====================================================

*PLEASE TAKE NOTICE*
☐   *that the within is a (certified) true copy of a*
    *entered in the office of the clerk of the within named Court on*
NOTICE OF
ENTRY
    *that an Order of which the within is a true copy will be presented for settlement to the Hon.*
☐   *one of the judges of the within named Court, at , on , at  .*
NOTICE OF
SETTLEMENT

*Dated:*                      **WHITE FLEISCHNER & FINO, LLP**

                   *Attorneys for*
                                        **61 BROADWAY**
                                        **NEW YORK, N.Y. 10006**

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                       ) ss:
COUNTY OF NEW YORK     )

     Mary Ann Rooney, being duly sworn, deposes and says that deponent is not a party to the action, is over 18 years of age and resides in Queens, New York.  That on the 2nd day of September, 2014 deponent served the within Notice of Removal upon:

    Jonathan S. Chernow, Esq.
    White Fleishner & Fino, LLP
    61 Broadway, 18 Floor
    New York, New York  10006

    ISS Action, Inc.
    158-12 Rockaway Boulevard
    Suite 200
    Queens, New York  11434

at the addresses designated by said attorneys for that purpose by depositing same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office Department within the State of New York.

Sworn to before me this
2nd day of September, 2014

Notary Public

        Mary Ann Rooney

BEATRIZ ROMERO
Notary Public, State of New York
No. 01RO6176808
Qualified in Orange County
Commission Expires November 5, 20 15